

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00151-CV

Oscar **LOPEZ**, in his official capacity as Sheriff of Jim Wells County, Unknown Named Agents of Jim Wells County Sheriff's Department, in their official capacities, Jim Wells County Sheriff's Department, and Jim Wells County,
Appellants

v.

Monica **ESCOBAR**,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 12-06-51183-CV
Honorable Richard C. Terrell, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Sandee Bryan Marion, Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  August 28, 2013

REVERSED AND RENDERED

This is an appeal of the trial court's order denying appellants' plea to the jurisdiction in a personal injury suit brought by Monica Escobar. Appellants contend they have not waived governmental immunity from suit because the accident that caused Escobar's injuries did not arise from a governmental employee's use or operation of a motor vehicle. We agree that immunity has not been waived and therefore reverse the trial court's order.

## BACKGROUND

Monica Escobar sued Jim Wells County, its Sheriff, and unknown named agents of the County.[1] The petition alleged County agents, driving a patrol car with its lights activated, engaged in a "relentless pursuit" of a pickup truck driving eastbound on State Highway 44. It alleges the agents drove "at excessive rates of speed in high-traffic areas," in violation of Sheriff Department policies, and the officers knew or should have known that the pickup truck "was in imminent danger of losing control in a high-traffic area or posing other serious risks to other motorists in a high–traffic area." Escobar asserted that the officers' "relentless pursuit of the pickup truck caused the truck to drive perpendicular across traffic, directly in the path of Plaintiff's vehicle." She alleged the officer's negligent operation of the patrol car and/or the County's negligent entrustment of the car to the officer proximately caused her injuries. The petition alleges that immunity is waived because Escobar's injuries arose from the officer's operation or use of a motor vehicle.

The defendants (collectively referred to as "the County") filed a plea to the jurisdiction. The County attached to its plea copies of the Texas Department of Public Safety's accident report and the Sheriff's Department's incident report, which included the written statement of Captain Joe Martinez of the Jim Wells County Sheriff's Department. The County later supplemented its plea with excerpts from Escobar's deposition, the onboard video from Captain Martinez's patrol car, a printout of data from the patrol car showing the location and velocity of the unit for a period of time before and after the accident, and an affidavit interpreting the data. In response to the plea, Escobar submitted excerpts from Captain Martinez's deposition and Sheriff's Department policies setting guidelines for making decisions regarding pursuit of vehicles.

---

[1] The individuals were all sued in their official capacities only.

None of the evidence submitted to the trial court in support of or opposing the plea to the jurisdiction was disputed. The evidence established that Jim Wells County Sheriff's Department Captain Joe Martinez was driving a County vehicle with Texas Ranger Matthew Segur in the front passenger seat early in the afternoon on May 3, 2012. They responded to a request from Duval County to assist with three vehicles reported to be carrying undocumented individuals. Captain Martinez saw two trucks matching the description provided by the Duval County dispatcher turn onto State Highway 44, heading east. Highway 44 is a divided highway with two lanes going in each direction and a median in between. Captain Martinez followed and then passed one of the vehicles, a white pickup truck. He and Ranger Segur witnessed people ducking in an attempt to conceal themselves both in the bed and in the cab of the truck.

Captain Martinez slowed down and the white pickup truck passed him, travelling at approximately forty miles per hour. The speed limit on Highway 44 at that location is seventy miles per hour. Captain Martinez decided to stop the truck. He turned on his emergency lights, notified dispatch, and initiated a pursuit of the truck. Captain Martinez followed the truck in the eastbound lanes of Highway 44 for about twenty seconds at speeds that did not exceed fifty-one miles per hour.

When the pickup truck reached the uncontrolled intersection of State Highway 44 and County Road 170, it turned left into the median crossover that allows access to either westbound Highway 44 or northbound County Road 170. The driver of the pickup truck was braking and Captain Martinez testified he initially believed it had come to a stop in the crossover. Captain Martinez stopped his car about one and one-half car lengths behind the truck, but left the ignition and emergency lights on. Although Captain Martinez noticed the truck was slowly creeping forward, he and Ranger Segur got out of the patrol car and used hand signals and their voices to

direct the driver of the pickup truck to stop. The truck then darted out into traffic, where it was hit by Escobar's vehicle.

Escobar was driving in the right lane of westbound Highway 44. She testified she was driving seventy miles an hour and talking on the telephone when she saw the white pickup truck and the officers' car behind it driving eastbound on Highway 44. She testified she saw the truck and the patrol car turn into the crossover and come to a stop, and saw the officer get out of the car. The pickup truck then darted out onto the highway in front of her. She applied her brakes, but it was too late to avoid the accident.

Several people were ejected from the bed of the pickup truck and several more inside the cab were injured. The driver and a few other people who had been in the truck fled the scene. At the time of the trial court proceedings, the driver had not been located. Escobar was injured and received treatment at a hospital.

The County argued to the trial court that the evidence established the accident did not arise out of the use or operation of a motor vehicle. However, the trial court denied the County's plea to the jurisdiction and this appeal followed.

## GOVERNMENTAL IMMUNITY AND STANDARD OF REVIEW

The County enjoys governmental immunity from suit unless immunity has been waived. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Immunity from suit deprives the trial court of subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Id.* Whether there has been a waiver of immunity that confers subject matter jurisdiction on the trial court is a question of law, and we review the trial court's ruling on a plea to the jurisdiction *de novo. Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

**Plea to the jurisdiction**

A plea to the jurisdiction may challenge the sufficiency of the pleadings or challenge the existence of jurisdictional facts. *Id.* at 226-27. The County does not challenge the sufficiency of Escobar's pleading; rather, it contends the undisputed facts conclusively negate a waiver of immunity.

When a plea to the jurisdiction challenges the existence of jurisdictional facts by controverting the factual allegations in the petition that support jurisdiction, the court considers relevant evidence submitted by the parties to resolve the jurisdictional issues raised. *Id.* at 227, 231. The court applies a standard that "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. Accordingly, "[w]hen reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the [respondent]." *Id.* "We indulge every reasonable inference and resolve any doubts in the [respondent's] favor." *Id.*

"If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227-28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228. When the evidence regarding the jurisdictional facts is undisputed, whether that evidence establishes a waiver of immunity and the trial court's jurisdiction is a question of law for the court. *Id.* at 226. "[W]hether a district court has subject matter jurisdiction is a question for the court, not a jury, to decide, even if the determination requires making factual findings, unless the jurisdictional issue is inextricably bound to the merits of the case." *Id.* (quoting *Cameron v. Children's Hosp. Med. Ctr.*, 131 F.3d 1167, 1170 (6th Cir.1997)). If the plaintiff cannot establish

a waiver of immunity under any reasonable view of the evidence, the plea must be granted. *Miranda*, 133 S.W.3d at 231-32.

**Waiver of immunity**

Section 101.021(1) of the Texas Tort Claims Act waives immunity for property damage and personal injury proximately caused by the negligence of a government employee acting in the scope of his employment if the damage or injury "arises from the operation or use of a motor-driven vehicle." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A). While not conceding either the negligence or proximate cause elements, the only jurisdictional fact challenged by the County in the plea to the jurisdiction was the assertion that Escobar's injury "arises from the operation or use of a motor-driven vehicle."

For immunity to be waived under section 101.021, the government employee must be the person who operated or used the motor vehicle that caused the injury. *Hamshire-Fannett Indep. Sch. Dist. v. LeLeaux*, 835 S.W.2d 49, 51 (Tex. 1992); *Ramos v. City of San Antonio*, 974 S.W.2d 112, 116-17 (Tex. App.—San Antonio 1998, no pet.) (holding "immunity is only waived where the governmental employee, not a third party, is the operator of the motor vehicle causing the injury"). In this context, "operation" means "a doing or performing of a practical work" and "use" means "to put or bring into action or service; to employ for or apply to a given purpose." *LeLeaux* 835 S.W.2d at 51 (quoting *Mount Pleasant Indep. Sch Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989)). A governmental employee who is not the driver of the motor vehicle that causes injury may nevertheless "use or operate" the motor vehicle if the employee exercised direct control over the movement of the vehicle. *See County of Galveston v. Morgan*, 882 S.W.2d 485, 490-91 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

The phrase "arises from," as used in section 101.021, requires a nexus between the operation or use of the motor vehicle and the plaintiff's injuries. *Dallas Area Rapid Transit v.*

*Whitley*, 104 S.W.3d 540, 543 (Tex. 2003); *LeLeaux*, 835 S.W.2d at 51. The nexus must be more than mere involvement of the motor vehicle; the government employee's operation or use of the vehicle "must have actually caused the injury." *Whitley*, 104 S.W.3d at 543 (quoting *Texas Natural Resource Conservation Com'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001)). "[T]he operation or use of a motor vehicle 'does not cause injury if it does no more than furnish the condition that makes the injury possible.'" *Whitley*, 104 S.W.3d at 543 (quoting *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998)).

### DISCUSSION

The County argues the trial court erred in denying its motion because the undisputed evidence conclusively establishes the accident did not arise from Captain Martinez's operation or use of a motor vehicle. The County contends the evidence establishes the patrol car did not cause Escobar's injuries and the officers were not in the car at the time of the accident; the officers did not use the patrol car in a manner that forced the truck to drive into oncoming traffic; and the officers did not exert any direct control over the manner in which the pickup truck was driven. The County argues the accident was caused solely by the deliberate and purposeful act of the third party truck driver when he decided to pull out into oncoming traffic instead of stopping, and that under these circumstances there is no waiver of immunity.

Escobar makes several arguments in support of the trial court's ruling. She first contends the patrol car was in "operation or use" at the time of the accident because the ignition and the overhead lights were on. Although these are the facts, Escobar provides no argument that the fact the ignition and lights remained on after the officers got out of the car played any role in causing her injuries. That is, there is no nexus between the fact the ignition and lights of the patrol car were on and the accident. *See Whitley*, 104 S.W.3d at 543; *LeLeaux*, 835 S.W.2d at 51.

Escobar next argues that immunity is waived by an officer's use or operation of a motor vehicle that causes an accident even if the officer is not driving the vehicle when the accident occurs, and argues the trial court's ruling is supported by the decisions in *Saramanee v. Town of Northlake*, No. 02-10-00152-CV, 2011 WL 944908 (Tex. App.—Fort Worth, March 17, 2011, pet. denied) (mem. op.), *Junemann v. Harris County*, 84 S.W.3d 689 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); and *City of El Campo v. Rubio*, 980 S.W.2d 943 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.).

In both *Saramanee* and *Junemann*, the accidents were directly caused by an officer's use of a patrol car to block lanes of highway traffic. In *Saramanee*, the officer sped up a freeway ramp and across double white lines and parked in the lane of traffic in order to stop motorcyclists he had observed doing "wheelies" on the highway. 2011 WL 944908, at *1. The officer opened his car door and two of the motorcyclists collided with each other when one tried to avoid hitting the patrol car. *Id.* at *5. In *Junemann*, the officer parked his car in a highway traffic lane behind a stalled car. 84 S.W.3d at 692. Several cars swerved to avoid the patrol car, resulting in a multi-vehicle accident that injured the plaintiff. *Id.* In both cases, the courts held immunity from suit was waived because the accident arose from the officer's use of the patrol vehicle. *Saramanee*, 2011 WL 944908, at *5; *Junemann*, 84 S.W.3d at 696.

In *Rubio*, a police officer stopped a car on the highway and arrested the driver for driving with a suspended license. The petition asserted the officer instructed an unlicensed passenger on how to drive by showing her where the gas and brake pedals were and then ordered her to follow him to the police station. 980 S.W.2d at 944. As she pulled onto the highway to follow the officer as she was ordered to do, she was hit by an oncoming vehicle. *Id.* The court held these pleadings sufficient to allege the officer used or operated the vehicle by directly exercising control over its movement. *Id.* at 946-47.

Escobar asserts this case is analogous to *Saramanee*, *Junemann*, and *Rubio* because Captain Martinez "guided," "directed," or "forced" the pickup truck into the median, "created a blockade on the median with his patrol unit," and left the pickup truck nowhere to go except into oncoming traffic. However, the undisputed evidence, viewed in the light most favorable to Escobar, does not support her factual assertions. There is no evidence the pickup truck driver was directed, forced or coerced into turning into the median instead of continuing in the eastbound lanes or stopping on the shoulder of the eastbound lanes. There is no evidence the "pursuit" was at a speed that precluded the pickup truck from stopping once it had turned into the median. Rather, the evidence conclusively established both the patrol car and the truck were traveling well below the speed limit, and Escobar herself testified she saw both the truck and patrol car stop after turning into the median and before the truck drove onto the highway. The only logical inference from the evidence is that the pickup truck driver did not want to submit to the officer's authority and chose instead to flee into oncoming traffic when he saw the officers get out of the car.

Here, the evidence establishes Captain Martinez did not use his car to block or interfere with traffic in a manner to cause the accident; nor did he exercise any control over the movements of the pickup truck. Therefore, the case is not controlled by *Saramanee*, *Junemann*, or *Rubio*. Instead, the facts are much more akin to those in *City of Dallas v. Hillis*, 308 S.W.3d 526 (Tex. App.—Dallas 2010, pet. denied). In that case, a police officer attempted to initiate a traffic stop of Hillis, who was on a motorcycle. When Hillis did not stop, the officer pursued him at speeds greater than 110 mph onto the freeway. Hillis lost control of his motorcycle, causing him to fall and sustain fatal injuries. Hillis's survivors sued the City, alleging the officer violated the City's high-speed chase policy and negligently caused Hillis's death. The court of appeals held the City's immunity from suit was not waived because Hillis's death did not arise from the officer's use or operation

of a motor vehicle, but instead was caused solely by Hillis's deliberate decision to flee the officer at a reckless rate of speed. *Id.* at 534-535.

Captain Martinez's use of the patrol car—by following or "pursuing" the truck with his overhead lights on while driving below the speed limit, by following the truck into the median, by leaving the overhead lights on, and by leaving the engine running when he got out of the car—did not actually cause Escobar's injuries. The unknown driver of the truck's decision to try to flee by darting out into traffic caused the injuries. The only connection between the use of the patrol car and Escobar's injuries is that Captain Martinez was attempting to initiate a stop of the vehicle with which Escobar collided. That fact alone is nothing more than mere involvement of the official vehicle and is an insufficient nexus to result in a waiver of immunity. *See Whitley*, 104 S.W.3d at 543. Escobar would apparently have us hold that immunity from suit is always waived under section 102.021(1)(A) if an accident occurs while an officer in a government vehicle is attempting to affect a traffic stop, regardless of the circumstances, merely because a government employee in a motor vehicle is involved. We decline to so hold.

We hold that there is no reasonable view of the evidence under which Captain Martinez's operation or use of the vehicle actually caused Escobar's injury. Under the circumstances shown by the undisputed facts in this case, Escobar's injuries did not arise from a County employee's use or operation of a motor vehicle. To the contrary, the evidence shows the pickup truck driver, in an attempt to flee, caused Escobar's unfortunate injuries. The trial court therefore should have granted the plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 231-32. Accordingly, we reverse the trial court's order and render judgment dismissing the cause for want of jurisdiction.

Luz Elena D. Chapa, Justice